UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

―――――――――――――――――――――――――――――――――――――――――――――――――――――

IN RE:     LEONEL VILLALOBOS and       Case No. 10-39913-pp
            MARIBEL VILLALOBOS,

                            Chapter 13

               Debtors.

―――――――――――――――――――――――――――――――――――――――――――――――――――――

LEONEL VILLALOBOS and           Adv. No. 11-2102
MARIBEL VILLALOBOS,

               Plaintiffs,

v.

BAC HOME LOANS SERVICING, LP,

               Defendant.

―――――――――――――――――――――――――――――――――――――――――――――――――――――

**REPORT AND RECOMMENDATION TO THE DISTRICT COURT,
RECOMMENDING THAT THE DISTRICT COURT GRANT
THE PLAINTIFFS'/COUNTERCLAIM DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENY THE DEFENDANT/COUNTERCLAIM
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

―――――――――――――――――――――――――――――――――――――――――――――――――――――

On July 14, 2011, plaintiffs Leonel and Maribel Villalobos filed a motion

for summary judgment.  Due to a series of events that transpired thereafter,

1

the plaintiffs (at the behest of the bankruptcy court) withdrew that motion on August 17, 2011. On December 1, 2011, with leave of the bankruptcy court, the plaintiffs re-filed the motion for summary judgment.

Less than a week later, on December 7, 2011, the defendant filed its own motion for summary judgment. The plaintiffs filed their reply to that motion on January 20, 2012.

On January 30, 2012, the Court heard oral arguments on the motions for summary judgment. At the outset of that hearing, the Court noted that the defendant's answer did not address whether it considered the lawsuit to involve a "core" proceeding; in fact, the answer implied that the defendant did *not* consider the lawsuit to involve a "core" proceeding. *See* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 . . . .") Further, the defendant had filed a counterclaim, but had not asserted in that counterclaim either a basis for the bankruptcy court's exercise of jurisdiction or an opinion as to whether the counterclaim involved a "core" proceeding. Thus, the bankruptcy court enquired of the parties whether or not they consented to the bankruptcy court's authority to enter a final order on the motions for summary judgment. *See*, Stern v. Marshall, 131 S.Ct. 2594 (2011); Ortiz v. Aurora Health Care, Inc., 665 F.3d 906 (7th Cir. 2011).

Counsel for the defendant stated that he believed that both the original claim and the counterclaim involved "core" proceedings, and that he consented

Case 11-02102-pp    Doc 55    Filed 03/07/12    Page 2 of 21

to the bankruptcy court's entry of a final order. The Chapter 13 trustee did not take a position. Counsel for the plaintiffs, however, did not agree that the defendant's counterclaim constituted a "core" proceeding, and did not consent to the bankruptcy court's authority to enter a final order on that counterclaim. Accordingly, the Court makes the following proposed findings of fact and conclusions of law, which it submits to the United States District Court for the Eastern District of Wisconsin as a report and recommendation. *See* 28 U.S.C. § 157(c)(1).

## **Proposed Findings of Fact**

### *The Original Mortgage on the Plaintiffs' Homestead*

1. As of September 15, 1999, plaintiff Leonel Villalobos owned real property located at 1805 Racine Street, Racine, Wisconsin 53403 ("the homestead"). (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 1.)

2. On January 20, 2004, plaintiff Leonel Villalobos quit-claimed an interest in the homestead to his wife, plaintiff Maribel Villalobos. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 2.)

3. The plaintiffs have lived in the homestead continuously since January 2004. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 2.)

4. In February 2005, the plaintiffs obtained a mortgage on the homestead

3

from Michigan Fidelity Acceptance Corporation (doing business as Franklin Mortgage Funding). Michigan Fidelity Acceptance Corporation recorded that mortgage with the Racine Register of Deeds on March 1, 2005. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 4.)

5.  Michigan Fidelity eventually became U.S. Bank Home Mortgage.

*The Mortgage on the Plaintiffs' Rental Property*

6.  As of July 2004, the plaintiffs also owned a piece of rental property at 1234 Highland Avenue, Racine, Wisconsin 53403. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 3.)

7.  In November 2006, the plaintiffs obtained a mortgage on the rental property from First NLC Financial Services, LLC. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 5.)

8.  First NLC eventually became Citifinancial.

*The Attempted Re-Finance of the Mortgage on the Homestead*

9.  In March 2007, the plaintiffs applied to refinance the mortgage on the homestead through Countrywide Bank FSB. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 6.)

10.  The closing instructions indicate that the plaintiffs were seeking to

4

refinance the mortgage on the property at 1805 Racine Street–their homestead. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 7.)

11. The commitment from Synergy Title Services, LLC (the settlement agent) indicates that Countrywide was re-financing the mortgage on the homestead. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibits 7 and 8.)

12. The settlement statement for the re-financing also reflects the address of the homestead as the property to be re-financed. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 9.)

13. Various other documents associated with the re-finance show that the plaintiffs were obtaining a re-finance of the mortgage on their homestead. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibits 12-14.)

14. On March 15, 2007 (the date of the closing on the re-finance transaction), the plaintiffs signed a HUD Settlement Statement (a "HUD-1"). Line 104 of the HUD-1 stated, "Payoff-Citifinancial." Citifinancial (successor to First NLC Financial Services) held the mortgage on the plaintiffs' *rental* property, not their homestead. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 9.)

15. The note (with the plaintiffs as borrowers and Countrywide Bank, FSB, as the lender) reflects the address of the homestead. The note is dated March 15, 2007, and shows that Countrywide lent the plaintiffs $100,000.00. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 10.)

16. The plaintiffs stated, in a sworn affidavit dated July 13, 2011, that they noticed at the closing that the HUD-1 incorrectly stated that the borrowed funds should be paid to the holder of the mortgage on their rental property. The plaintiffs stated in the July 13, 2011 affidavit that they told the settlement agent that the HUD-1 contained an error, and that the payoff should be made to the holder of the mortgage on their homestead. They further stated in the affidavit that the settlement agent told them not to worry about the error, that he would correct it when he returned to his office. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 17.)

17. On March 20, 2007, Synergy Title Services (the settlement agent for the re-finance) issued a check payable to Citifinancial (successor to First NLC Financial Services). First NLC/Citifinancial held the mortgage on the plaintiffs' *rental* property, not on their homestead. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 14.)

18. On March 26, 2007, Countrywide filed its mortgage with the Racine

6

Register of Deeds, encumbering the plaintiffs' homestead.  (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 11.)

19.     On April 9, 2007, a satisfaction of mortgage was filed with the Racine County Register of Deeds, which stated that Mortgage Electronic Registration Systems ("MERS"), as nominee for First NLC Financial Services, LLC, certified that the November 2006 mortgage to First NLC had been satisfied.  Again, the November 2006 First NLC mortgage was the mortgage on the plaintiffs' *rental* property, not the mortgage on their homestead.  (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 15.)

20.     In their July 13, 2011 affidavit, the plaintiffs stated that they did not discover that Countrywide had paid off the wrong mortgage until 30 days after the closing, when they received a statement from the holder of their homestead mortgage.  The plaintiffs state that at that time, they called the holder of the homestead mortgage, and learned that Countrywide had not paid off that mortgage.  (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 17.)

21.     The plaintiffs stated in the July 13, 2011 affidavit that upon learning that Countrywide had not paid off the mortgage on their homestead, they contacted Countrywide, who responded that it could not correct the

7

error.  (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 17.)

22. The plaintiffs state in the July 13, 2011 affidavit that after BAC Home Loans purchased Countrywide Bank, the plaintiffs contacted BAC and informed it of the error, but that BAC also stated that it could not correct the error.  (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 17.)

23. The plaintiffs state in the July 13, 2011 affidavit that they cannot recall how many times they contacted either Countrywide or BAC to try to get the error corrected, but that they do recall having made their last contact a couple of months before they filed their bankruptcy petition.  (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Plaintiffs' Exhibit 17.)

24. The result of the above actions was Countrywide (now BAC Home Loans) paid off the plaintiffs' rental property in full, but had no lien against the property.  Countrywide did have a recorded mortgage on the plaintiffs' homestead, but because its loan had not been applied toward the first mortgage (held by U.S. Bank Home Mortgage), Countrywide's lien on the homestead was second behind that of U.S. Bank Home Mortgage.

25. At a November 28, 2011 hearing, counsel for the defendant indicated that the defendant was not in a position to present a witness or an affidavit to either support or refute the plaintiffs' assertions regarding

8

what they told the settlement agent at the closing. Counsel for the defendant had learned the identity of the settlement agent and had sent that agent a letter, but the settlement agent had not responded. Since the date of the closing, Countrywide Bank had ceased to exist, and its successor, defendant BAC, had not been a participant in the closing or had any representative present there. (Court minutes from November 28, 2011 status hearing and hearing on motion to compel, docket no. 36.)

*The Bankruptcy Case*

26.     On December 20, 2010, the plaintiffs filed a petition under Chapter 13 of the Bankruptcy Code. (Case No. 10-39913, In re: Leonel and Maribel Villalobos, docket no. 1.)

27.     On Schedule A–Real Property, the plaintiffs listed the homestead, and noted that there was a secured claim on that property in the amount of $211,535.00. They valued the homestead at $89,800. They also listed the rental property, and listed the amount of the secured claim on that property as $0.00. (Case No. 10-39913, In re: Leonel and Maribel Villalobos, docket no. 1.)

28.     On their Schedule D–Creditors Holding Secured Claims, they indicated that U.S. Bank held a first mortgage on their homestead, with a secured claim of $99,192, and that BAC Home Loans held a second mortgage on their homestead, with an unsecured claim of $10,189. (Case No. 10-

9

39913, In re: Leonel and Maribel Villalobos, docket no. 1.)

29. On their Schedule C–Property Claimed as Exempt, the plaintiffs claimed the rental property as fully exempt. They did not claim an exemption for their homestead. (Case No. 10-39913, In re: Leonel and Maribel Villalobos, docket nos. 1, 27 (amended Schedule C, filed June 20, 2011.)

30. In paragraph 10 of their Chapter 13 plan, the debtors indicated that they would be filing a lawsuit to "strip-off" BAC Home Loans Servicing's "wholly unsecured" second and third mortgages on the homestead. (Case No. 10-39913, In re: Leonel and Maribel Villalobos, docket no. 3.)

31. On January 10, 2011, Citibank, NA, c/o BAC Home Loans Servicing, LP, filed a proof of claim in the amount of $101,513.63. The proof of claim lists the claim as secured by real estate at 1805 Racine St., Racine, Wisconsin 53403. Attached to the proof of claim are the mortgage, the note, and an assignment of the mortgage to Citibank, NA. (Case No. 10-39913, In re: Leonel and Maribel Villalobos, claims register, Claim #1.)

32. On February 15, 2011, BAC Home Loans filed an objection to confirmation of the plaintiffs' Chapter 13 plan. The objection claimed that BAC held a mortgage on the homestead in the original amount of $100,000, with a payoff balance of $101,513.63 and an arrearage of $3,830.78. The objection argued that the plaintiffs' plan sought to "avoid this mortgage." It stated that BAC was trying to determine whether it did, in fact, hold its liens junior to another lien holder, and was also

10

investigating the value of the plaintiffs' homestead. (Case No. 10-39913, In re: Leonel and Maribel Villalobos, docket no. 14.)

33. The Court adjourned the hearing on BAC's objection to confirmation of the plan several times, putting it on the same track as the hearings on the motions for summary judgment in the instant adversary lawsuit.

*The Adversary Lawsuit*

34. On February 11, 2011, the plaintiffs filed the instant lawsuit against defendant BAC Home Loans Servicing LP. The complaint asked the bankruptcy court to determine that BAC's second mortgage on their homestead (and third mortgage for a home equity line of credit) were unsecured under 11 U.S.C. § 506(d), such that BAC's liens for those mortgages could be voided. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 1.)

35. The plaintiffs attached to the complaint a parcel detail from the Racine County Property Tax Assessor, which indicated that the County had assessed the value of the plaintiffs' homestead at $90,000 for tax purposes, with an estimated fair market value of $89,757.65. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 1, Exhibit A.)

36. The plaintiffs also attached to the complaint an October 15, 2010 mortgage statement from U.S. Bank Home Mortgage, which stated that the principal balance the plaintiffs owed U.S. Bank as of the statement

11

date was $99,192.00, and an escrow balance of $1,474.87. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 1, Exhibit B.)

37. The defendant filed an answer on April 12, 2011, stating that it lacked the knowledge to be able to concede that it held "second" and "third" lien positions on the homestead. In addition to asserting affirmative defenses, the answer also contained a counterclaim against the plaintiffs. The counterclaim stated that the defendant "inadvertently" paid off the rental property rather than the homestead property, and thus that the defendant was entitled to be equitably subrogated to first lien priority on the rental property (even though the defendant does not have a mortgage on the rental property). The answer cited to Wis. Stat. § 841. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 11.)

38. At a hearing on May 18, 2011, and at other hearings thereafter, counsel for the defendant conceded that because of the series of events described above, BAC did appear to hold the second (the $100,000 re-finance loan) and third (the small home equity line of credit) lien positions on the homestead property (behind first mortgage holder U.S. Bank), and that the third mortgage was unsecured. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket nos. 12, 15, 36.) The remaining issue to be determined was whether or not the

12

bankruptcy court ought to impose an equitable lien in BAC's favor on the rental property.

39. The plaintiffs' motion for summary judgment asks the bankruptcy court to dismiss the defendant/counterclaim plaintiff's counterclaim, and to deny the defendant/counterclaim plaintiff's request that the court impose an equitable lien in its favor on the rental property. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37.)

40. The plaintiffs attached to their motion a Comparable Market Analysis dated December 4, 2010, which indicated that the range for a listing value for the *rental* property should be a low of $13,000, a high of $20,000, and a recommended listing value of $16,520. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 37, Exhibit 18.)

41. The defendant's motion for summary judgment asks the bankruptcy court to deny the plaintiffs' motion for summary judgment, and to grant the request the defendant made in its counterclaim to impose an equitable lien in its favor on the rental property. (Case no. 11-2102, Leonel and Maribel Villalobos v. BAC Home Loans Servicing LP, docket no. 41.)

## Proposed Conclusions of Law

1. Pursuant to Fed. R. Bankr. P. 7056, a bankruptcy court shall grant a

13

motion for summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Bankr. P. 7056.  *See also,* Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2. The undisputed facts demonstrate that the mortgage which the defendant filed on the homestead on March 26, 2007 is second to the mortgage filed by Michigan Fidelity Acceptance Corporation (now U.S. Bank Home Mortgage) on March 1, 2005.

3. Wis. Stat. § 841.01 states that "[a]ny person claiming an interest in real property may maintain an action against any person claiming a conflicting interest, and may demand a declaration of interests."

4. The defendant has, through its counterclaim, claimed an interest in the rental property, against the plaintiffs' interest in that property.  The defendant asserts that it has this interest by virtue of the fact that it applied the re-finance funds to pay off the lien on that rental property, allowing the plaintiffs to own the rental property free and clear of any liens.

5. The defendant has asked the bankruptcy court to verify that interest by imposing an equitable lien in its favor on the rental property.

6. "An equitable lien is good in bankruptcy only if it would be sufficient to constitute a property interest under applicable state law. Under

14

Wisconsin law, equitable liens arise in two general situations: when a written contract reflects the parties' intent to satisfy a debt from particular property, or when a court grants equitable relief in light of the parties' relationship and dealings." In re Stoffregen (Swanson v. Stoffregen), 206 B.R. 939, 943 (Bankr. E.D. Wis. 2007) (citations omitted).

7.  "The essential elements of an equitable lien are (1) a benefit conferred upon the defendant . . . by the plaintiff . . . ; (2) an appreciation or knowledge by the defendant of the benefit; (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit; and (4) a specific *res* to which the lien can attach which can be identified or described with reasonable certainty. Matter of Adametz, 53 B.R. 299, 306 (Bankr.W.D.Wis.1985) (citing Puttkammer v. Minth, 83 Wis.2d 686, 689, 266 N.W.2d 361 (1978); McIntyre v. Cox, 68 Wis.2d 597, 602, 229 N.W.2d 613 (1975); Restatement, Restitution § 161, at 650)." In re Stoffregen (Swanson v. Stoffregen), 206 B.R. 939, 944 (Bankr. E.D. Wis. 2007).

8.  Put another way, "'Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises.' McIntyre v. Cox, 68 Wis.2d 597, 601, 229 N.W.2d 613 (1975) (citing Restatement (First) Restitution § 161, at 650)." In re Kirchner

15

(Kepler v. Kirchner), 372 B.R. 459, 463 (Bankr. W.D. Wis. 2007).

9. "[T]he purpose of an equitable lien is to prevent unjust enrichment." In re Kirchner (Kepler v. Kirchner), 372 B.R. 459, 463 (Bankr. W.D. Wis. 2007) (citations omitted).

10. There is a written document (albeit not a contract) in this case which reflects the parties' intent in this case, and it does not reflect an intent to satisfy BAC Home Loans' debt from the rental property.

11. The loan application which plaintiff Maribel Villalobos signed on March 15, 2007 indicates that she intended to satisfy BAC's debt from the homestead. (Exhibit 6 to the motion for summary judgment.)

12. The closing instructions, prepared by Nancy Xiong of lender Countrywide (now BAC), demonstrated that Countrywide (now BAC) intended that its debt be satisfied by the homestead.

13. The parties concede that the plaintiffs sought the loan to pay off the debt on their homestead, and the defendant issued the loan to pay off the debt on the homestead.

14. The plaintiffs did receive a benefit when the defendant paid off the loan on the rental property. They received the benefit of owning that rental property free and clear.

15. The plaintiffs also learned, at some point after the closing on the re-finance, that they had received this benefit.

16. There also is a specific *res* to which an equitable lien could attach–the

16

rental property.

17. The bankruptcy court finds, however, that the evidence does not support the defendant/counterclaim plaintiff's claim that the plaintiffs accepted or retained the benefit "under circumstances making it inequitable for [them] to retain the benefit." In re Stoffregen, 206 B.R. at 944.

18. The bankruptcy court finds that the plaintiffs' affidavit (Exhibit 17 to their motion for summary judgment) establishes that they notified the settlement agent at the closing that the HUD-1 erroneously purported to pay the loan proceeds to the lien holder on the rental property.

19. The affidavit further establishes that the settlement agent told the plaintiffs to go ahead and sign the HUD-1 and go through with the closing, and that he would correct the error after returning to his office.

20. The affidavit further establishes that when the plaintiffs learned that the defendant had paid off the mortgage on the rental property, they contacted both Countrywide and its successor, BAC, more than once to attempt to correct the error, but were told that the error could not be corrected.

21. There is no evidence in the record to contradict the plaintiffs' affidavit.

22. The affidavit demonstrates that the plaintiffs did not "accept" the benefit of having the rental property paid off. Instead, they attempted to reject that benefit, but were told that they could not do so.

23. The record contains no evidence that the plaintiffs have been "unjustly"

17

enriched.

24. Prior to filing their bankruptcy case, they not only continued to pay U.S. Bank, the first mortgage holder on their homestead. They also continued to make payments to BAC, the lien holder on the homestead. Between March 2007 and at least December 2010, they paid against the debt to BAC, even though that debt may have been unsecured.

25. The defendant argued at the hearing on the motions for summary judgment that the plaintiffs had "unclean hands," because they signed the HUD-1 even though they realized it purported to pay off the wrong lien holder. The bankruptcy court finds that the uncontested facts do not support this argument.

26. The facts in the plaintiffs' affidavit explain why they signed the HUD-1. They signed it, not for the purpose of unjustly enriching themselves, but because they believed the settlement agent when he told them that he would make certain that the loan proceeds were used to pay the correct lien holder.

26. The defendant has argued that for the bankruptcy court (or the district court) to refuse to impose an equitable lien in its favor would "unjustly" enrich the plaintiffs by granting them ownership of the rental property free and clear, and by paving the way for the plaintiffs to strip some or all of the defendant's second lien on the homestead if, as is likely, the plaintiffs demonstrate that the second lien is unsecured. The

18

bankruptcy court finds that the uncontested facts do not support this argument.

27.   It is true that if the court declines to impose an equitable lien on the rental property, the plaintiffs will own that property free and clear.  And if the plaintiffs are able to show that the defendant's second mortgage on the homestead is unsecured, the plaintiffs will be able to "strip off" that junior, unsecured mortgage.

28.   The bankruptcy court does not agree, however, that the scenario described in paragraph 27 above would constitute "unjust" enrichment of the plaintiffs.  The plaintiffs would own a rental property with a fair market value, as of December 2010, of approximately $16,520–far less than the $100,000 they borrowed from the defendant, and far less than the $101,000 the defendant claims remains due.

29.   Given the activity in the real estate market in Wisconsin in the last 18 months, it may well be that the rental property currently has a fair market value of less–possibly far less–than the $16,520 suggested in the comparative market analysis the plaintiffs attached to their motion for summary judgment.

30.   In spite of the fact that the plaintiffs would own a rental property worth only a fraction of the amount they borrowed from the defendant, they would have made payments against their loan to the defendant for some 18 months.

19

31. Even if the plaintiffs demonstrate that the homestead is worth less than the amount they owe the first mortgage holder, and thus are able to "strip" the defendant's second mortgage lien, the defendants still would hold a general, unsecured, non-priority claim on the property.

32. The plaintiffs' Chapter 13 plan currently proposes to pay a small dividend to general, unsecured, non-priority creditors.

33. Even if the plaintiffs succeed in stripping the defendant's second mortgage lien, that lien will "spring back" if the plaintiffs' Chapter 13 case fails to reach completion.

34. In addition to all of the above, the bankruptcy court finds that the reason that the defendant finds itself holding a second mortgage on the plaintiffs' homestead, rather than holding a first mortgage on the homestead, or holding a mortgage on the rental property, is because it erroneously applied the proceeds of the loan to pay off the wrong lien. It was the defendant's erroneous actions–not those of the plaintiffs–that conferred a benefit upon the plaintiffs, and caused any arguable "enrichment" of the plaintiffs.

## Recommendation of the Bankruptcy Court

Based upon the above proposed findings of fact and conclusions of law, the bankruptcy court respectfully **RECOMMENDS** that the district court:

\*      Grant the plaintiffs' motion for summary judgment (asking that the court not impose an equitable lien on the rental property in favor

20

of the defendant);

*   Deny the defendant's motion for summary judgment (asking the court to impose an equitable lien on the rental property in favor of the defendant); and

*   Dismiss the defendant's counterclaim requesting imposition of an equitable lien on the rental property in favor of the defendant.

# # # # #

Case 11-02102-pp    Doc 55    Filed 03/07/12    Page 21 of 21